[No. 48081-2-I.   Division One.   February 25, 2002.]

EULA PAUL, *as Administrator, Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Robert E. Kovacevich* (of *Law Offices of Robert E. Kovacevich, P.S.*), for appellant.

*Christine O. Gregoire, Attorney General*, and *John S. Barnes, Assistant*, for respondent.

ELLINGTON, J. — Cigarettes may be transported through Washington without Washington tax stamps if the shipment originates outside Washington, is destined for another state, and the person transporting the cigarettes carries invoices identifying the name and address of the seller and purchaser. The Department of Revenue knew Ronald Paul's cigarette shipment originated in Canada, was destined for Montana, and arrived in Washington with such invoices. The Department therefore lacked probable cause to seize the cigarettes. Forfeiture was improper, and we reverse.

## FACTS

In February of 1994, Ronald Paul purchased a large quantity of Canadian cigarettes and tobacco products. Paul is Native American and a registered member of the Blackfeet Tribe. He intended to ship the cigarettes and tobacco from Canada to his business on the Blackfeet reservation in Montana. Paul had the shipment delivered to the foreign trade zone[1] at the Bellingham airport, where the cigarettes and tobacco were to be loaded onto trucks bound for Montana.

[1] Foreign trade zones are areas in or adjacent to United States ports, and merchandise shipped to such zones is exempt from United States customs laws. 19 U.S.C. §§ 81b, 81c.

Based on a tip from a Vancouver, B.C., police officer about untaxed cigarettes coming into Washington, Paul's shipment was inspected in the trade zone by customs officials of the United States and Canada, a district manager of the Washington State Department of Revenue, and local law enforcement officers.[2] During the inspection, the Department's district manager, Maine Peace, saw the invoices that accompanied the unstamped cigarettes in the trade zone. The invoices gave the name and address of the seller, A.H. Riise Ships Chandlers of Vancouver, B.C., as well as the name and address of the purchaser, Paul's company, Gemini 2, located on the Blackfeet reservation in Montana.

While the shipment remained in the trade zone, Peace ascertained that Paul was not licensed as a cigarette wholesaler in Washington, and had not notified the Department of the shipment in advance. Peace also contacted the Blackfeet Tribe, but they were not aware of the shipment.

Before the shipment was loaded onto the trucks, Peace saw Paul's agent remove the invoices, cut the name and address information from the top of the invoices, and give those invoice tops to a warehouse worker. Peace, who was working undercover, then helped load the shipment onto the trucks. Later, he retrieved the invoice tops and complete copies of the invoices from the warehouse.

The trucks left the foreign trade zone. They were followed by United States Customs agents, Whatcom County Sheriff's deputies, Royal Canadian Mounted Police officers, and Peace. When the drivers stopped at a Bellingham restaurant, they were surrounded and arrested and the trucks were seized. No invoices were found in the trucks.

Paul filed a petition for return of the seized property. The parties agreed to sell the cigarettes at auction and pay the proceeds into the registry of the court. After a bench trial, the court determined the cigarettes were properly seized and should be forfeited to the Department. Paul's wife, as administrator of his estate, appeals.

[2] The validity of that search is not at issue here.

## DISCUSSION

Washington taxes the sale, use, consumption, handling, possession, and distribution of cigarettes. *See* RCW 82-.24.020. To enforce collection of Washington's cigarette excise tax, cigarette packages or cartons are affixed with a stamp that allows the Department of Revenue to readily ascertain whether the tax has been paid. RCW 82.24.030. In 1994, the year when Ron Paul's cigarettes were seized, transportation of unstamped cigarettes was regulated as follows:

No person other than (1) a licensed wholesaler in its own vehicle, or (2) a person who has given notice to the department in advance of the commencement of transportation shall transport or cause to be transported cigarettes not having the stamps affixed to the packages or containers, upon the public highways, roads or streets of this state. In the case of transportation of unstamped cigarettes such persons shall have in their actual possession invoices or delivery tickets for such cigarettes, which shall show the true name and address of the consignor or seller, the true name of the consignee or purchaser, and the quantity and brands of the cigarettes so transported. If the cigarettes are consigned to or purchased by any person in this state such purchaser or consignee must be a person who is authorized by chapter 82.24 RCW to possess unstamped cigarettes in this state. In the absence of such invoices or delivery tickets, or, if the name or address of the consignee or purchaser is falsified or if the purchaser or consignee is not authorized by chapter 82.24 RCW to possess unstamped cigarettes, the cigarettes so transported shall be deemed contraband subject to seizure and sale under the provisions of RCW 82.24.130.

Transportation of cigarettes from a point outside this state to a point in some other state will not be considered a violation of this section provided that the person so transporting such cigarettes has in his possession adequate invoices or delivery tickets which give the true name and address of such out-of-state seller or consignor and such out-of-state purchaser or consignee.

> In any case where the department or its duly authorized agent, or any peace officer of the state, has knowledge or reasonable grounds to believe that any vehicle is transporting cigarettes in violation of this section, the department, such agent, or such police officer, is authorized to stop such vehicle and to inspect the same for contraband cigarettes.
>
> For purposes of this section, the term "person authorized by chapter 82.24 RCW to possess unstamped cigarettes" shall mean a wholesaler or retailer, licensed under Washington state law, the United States or an agency thereof, and any Indian tribal organization authorized under rules adopted by the department of revenue to possess unstamped cigarettes.

Former RCW 82.24.250 (1990), *amended by* LAWS OF 1995, ch. 278, § 10; LAWS OF 1997, ch. 420, § 7.[3]

■ Unstamped cigarettes that are transported without complying with RCW 82.24.250 are contraband and are subject to seizure under RCW 82.24.130. *See* former RCW 82.24.250 (1990). Paul's cigarettes were seized without a warrant. A warrantless seizure is authorized only upon probable cause and exigent circumstances:

> The department or law enforcement officer has probable cause to believe that the property was used or is intended to be used in violation of this chapter and exigent circumstances exist making procurement of a search warrant impracticable.

Former RCW 82.24.130(2)(b) (1990), *amended by* LAWS OF 1997, ch. 420, § 5; LAWS OF 1999, ch. 193, § 3.

■ ■ The Department argues it had probable cause to believe Paul's shipment violated former RCW 82.24.250 because during the search at the foreign trade zone, Peace determined that (1) Paul was not a licensed wholesaler transporting the cigarettes in his own vehicle, and (2) Paul had not given the Department advance notice of the transportation. But these are the requirements for transporting cigarettes to a nontaxable Washington destination. They do not apply when cigarettes are only passing through Washington. In that case, a different paragraph of the statute applies, and only invoices are required:

---

[3] The statute was not substantively changed by later amendments.

> Transportation of cigarettes from a point outside this state to a point in some other state will not be considered a violation of this section provided that the person so transporting such cigarettes has in his possession adequate invoices or delivery tickets which give the true name and address of such out-of-state seller or consignor and such out-of-state purchaser or consignee.

Former RCW 82.24.250 (1990).

The Department contends that this paragraph does not pertain, because the shipment stopped in the Bellingham foreign trade zone while en route from Canada to Montana, and therefore did not originate at a point outside Washington. This argument is not persuasive. Foreign trade zones are places for foreign merchandise to be "stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated." 19 U.S.C. § 81c(a). The purpose of these zones is simply to expedite and encourage foreign commerce by exempting merchandise brought into the zones from United States customs laws. *See* 19 U.S.C. § 81c(a); *Fountain v. New Orleans Pub. Serv., Inc.*, 387 F.2d 343, 344 (5th Cir. 1967). That a shipment may be repacked or reassembled does not necessarily give it a new origination point. And Paul's shipment was simply transferred intact to trucks.

More important here are the trial court's findings that Paul purchased the cigarettes in Canada and intended to ship them to the Blackfeet reservation in Montana, that there was "no evidence nor inference that the cigarettes were destined for any location in the State of Washington" and "no intent by the Petitioner to defraud the State of Washington." Clerk's Papers at 25. These findings are unchallenged and are verities on appeal. Paul was transporting his cigarettes from a point outside this state to a point in some other state within the meaning of former RCW 82.24.250 (1990).

■ Under that prong of the statute, the only requirement is that the person transporting the cigarettes have "in

his possession adequate invoices or delivery tickets." Former RCW 82.24.250 (1990). Invoices are adequate if they reflect the names and addresses of sellers and purchasers. *Id.* The proper inquiry is thus whether the Department had probable cause to believe the persons transporting Paul's cigarettes did not possess invoices that gave the names and addresses of the out-of-state seller and out-of-state purchaser.

The Department lacked such probable cause. Peace knew the cigarettes arrived in the foreign trade zone with proper invoices. He testified that he saw the invoices while loading the cigarettes onto the trucks, and that they contained the names and addresses of the seller and purchaser.

The Department claims this is unimportant because Paul's agent cut off the name and address information and gave those parts of the invoices to a warehouse worker before the trucks drove off. It is unclear why the Department believes this gave it the requisite probable cause. Peace had seen proper invoices. Nothing in the record suggests a basis for belief that the invoices he saw were the only copies. For all Peace knew, Paul had provided his drivers with their own copies of the invoices before they arrived at the foreign trade zone.

The fact that no invoices were found in the trucks does not provide probable cause, since this information resulted from the seizure. In fact, complete copies existed at the warehouse, although this information, too, came after the seizure.

The Department lacked probable cause to believe Paul's drivers were transporting the cigarettes without adequate invoices. The cigarettes were improperly seized, and the trial court erred in ordering forfeiture.

Reversed.

COLEMAN and COX, JJ., concur.